IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

HASSAN BIJAN ABDI,        )
                                    )
          Petitioner,     )
                                    )
vs.                            )     Case No. 03-CV-759-TCK-SAJ
                                    )
REGINALD HINES, Warden,    )
Lexington Correctional Center,   )
Lexington, Oklahoma,       )
                                    )
          Respondent.    )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state inmate represented by counsel. He filed a petition (Dkt. # 1) and a supporting brief (Dkt. # 9), challenging his convictions entered in Tulsa County District Court, Case No. CF-1999-6010. Respondent filed a response (Dkt. # 14) and provided the state court records (Dkt. #s 14, 15, and 28) for the Court's consideration in adjudicating Petitioner's claims. Petitioner did not file a reply. For the reasons discussed below, the Court finds the petition should be denied.

### BACKGROUND

Petitioner Hassan Bijan Abdi was a licensed dentist in Tulsa, Oklahoma. One of Petitioner's patients, Erica Thornton, alleged that on November 16, 1999, Petitioner massaged her leg and thigh with lotion, and put his hand under her shorts and rubbed her vagina without her consent. Another patient, Mary Kershman, alleged that on December 18, 1998, Petitioner groped her breast. Both women were under the influence of nitrous oxide when the incidents occurred. In addition, one of Petitioner's former employees, Amanda Evans, alleged that during the month of June, 1999, Petitioner massaged her leg and thigh with lotion and rubbed her buttocks without her consent.

Based on the accusations, Petitioner was charged in Tulsa County District Court, Case No.

CF-1999-6010, with three (3) counts of Sexual Battery.  At the conclusion of a jury trial, held

October 16-19, 2000, Petitioner was found guilty as charged.  Petitioner was represented at trial by

attorney Kurt K. Hoffman.

Represented by attorneys Clark Brewster and Robert Nigh, Jr., Petitioner filed a motion for

a new trial.  See Dkt. # 15, O.R. Vol. 1 at 99-147. In that motion, Petitioner argued, *inter alia*, that

the prosecutor had injected ethnic prejudice into his trial rendering it fundamentally unfair. He

attached to the motion copies of newspaper articles concerning the bombing of the USS Cole by

terrorists from the Middle East. Id. at 117-147. By order filed February 16, 2001, the trial court

denied the motion for a new trial.  Id. at 177-188.  In addition, the trial court sentenced Petitioner

in accordance with the jury's recommendation to five (5) years imprisonment and a fine of $10,000

on each count, with the sentences to be served consecutively.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal

Appeals ("OCCA").  On appeal, Petitioner continued to be represented by attorneys Brewster and

Nigh. He identified four (4) propositions of error as follows:

Proposition 1:  The State's invocation of ethnic prejudice against Dr. Abdi violated the most basic constitutional rights.

Proposition 2:  The Court's refusal to allow the testimony of Stephanie Melillo denied Dr. Abdi the right to present a defense.

Proposition 3:  Dr. Abdi was denied effective assistance of counsel.
        A.      Failure to investigate and present fact and character witnesses.
        B.      Counsel was ineffective in failure to object to the prosecutor's invitation to the jury panel to invoke ethnic prejudice.

Proposition 4:  The State's closing argument denied Dr. Abdi a fair trial.

(Dkt. # 14, Ex. A).  In an unpublished summary opinion, filed April 4, 2002, in Case No. F-2001-

207, the OCCA affirmed the judgments and sentences of the trial court. See Dkt. # 14, Ex. C.

2

On April 23, 2003, Petitioner, represented by attorney Mac Oyler, filed an application for post conviction relief in the state district court. <u>See</u> Dkt. # 28, Ex. 1. He identified seven (7) grounds of error as follows:

Ground 1:    The prosecutor's voir dire violated Sixth and Fourteenth Amendments as well as Oklahoma Constitution Article II, Sections 7 and 20 by inducing ethnic/racial bias and prejudice; improperly and incorrectly defining the elements/law diluting the presumption of innocence, improperly/incorrectly defining reasonable doubt; diluting the burden of proof and obtaining sworn commitments to return guilty verdicts (regardless of the defense).

Ground 2:    The prosecutor's closing argument transcended all bounds of propriety and violated Petitioner's Fifth and Fourteenth Amendment Constitutional Rights.

Ground 3:    Trial errors committed by the Prosecutor and/or condoned/committed by the Court which operated to deprive Petitioner of his Fifth, Sixth, Eighth, and Fourteenth Amendment Rights.

Ground 4:    The accumulation of irregularities, errors and prosecutorial misconduct denied Petitioner a fair trial, justifying reversal or at the minimum modification of sentence as being violative of Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment Rights.

Ground 5:    Petitioner was denied effective assistance of counsel at trial and on appeal in violation of his Sixth and Fourteenth Amendment Rights.

Ground 6:    This Court has discretion at all times to and should order Petitioner's sentences to run concurrently upon a Post-Conviction Application.

Ground 7:    This Court has discretion to, and should suspend these sentences in whole or part upon a Post-Conviction-Relief Application.

<u>See</u> <u>id.</u> By Order filed May 28, 2003 (Dkt. # 14, Ex. D), the district court denied the request for post-conviction relief. Petitioner appealed to the OCCA. By order filed September 2, 2003, in Case No. PC-2003-716, the OCCA affirmed the denial of post-conviction relief. <u>See</u> Dkt. # 14, Ex. F.

On November 7, 2003, Petitioner, represented by attorney Don Pope, filed the instant federal petition for writ of habeas corpus (Dkt. # 1). On December 22, 2003, Petitioner filed a supporting

brief (Dkt. # 9).  In his supporting brief, Petitioner identifies his grounds for relief as follows:

Ground 1:   The prosecutor's voir dire violated the Sixth and Fourteenth Amendments as well as Oklahoma Constitution Article II, Sections 7 and 20 by inducing ethnic/racial bias and prejudice; improperly and incorrectly defining the elements/law; diluting the presumption of innocence, improperly/incorrectly defining reasonable doubt; diluting the burden of proof and obtaining sworn commitments to return guilty verdicts (regardless of the defense).

Ground 2:   The prosecutor's closing argument transcended all bounds of propriety and violated Petitioner's Fifth and Fourteenth Amendment constitutional rights.

Ground 3:   Petitioner was denied effective assistance of counsel at trial and on appeal in violation of his sixth and fourteenth amendment rights.
    A.   Trial counsel failed to produce prior sworn testimony of Charlene Abside.
    B.   Failure to proceed with testimony of Stephanie Melillo was ineffective assistance of counsel.
    C.   Trial counsel's failure to impeach Erica Thornton with her inconsistent dental trial testimony and regarding the civil actions was ineffective assistance.
    D.   Other errors/omissions of trial counsel constituting ineffective assistance under the Sixth and Fourteenth Amendments.
    E.   Appellate counsel provided ineffective assistance by their failure to raise all the fundamental, reversible, prejudicial and unconstitutional errors and omissions of trial counsel on the direct appeal.

Ground 4:   Trial errors committed by the prosecutor and/or condoned/committed by the court which operated to deprive Petitioner of his Fifth, Sixth, Eighth and Fourteenth Amendment rights.
    A.   Improper/prejudicial count joinder.
    B.   Eyewitness inference/presumption instruction.
    C.   Prosecutor's injection of "harpoons" prejudiced the jury.
    D.   The prosecutor's ethnic/racial prejudicial efforts unfairly impacted the jury denying Petitioner a fair trial and due process.
    E.   Other trial court condoned/committed errors which denied Petitioner a fair, impartial judge and due process.
        1.   The trial court improperly assisted the prosecution in ruling on defense objections.
        2.   The trial court's ruling upon the defense witness and order of presentation was arbitrary and convoluted -- with the court exhibiting its bias and prejudice toward Petitioner based upon a hearsay statement by the prosecutor.
        3.   Error of the trial court in holding hearings in the chambers

4

without Petitioner's presence.

       Ground 5:      Cumulative effect of these errors denied Petitioner a fair trial.

(Dkt. # 9).  In response to the petition, Respondent contends that pursuant to 28 U.S.C. § 2254(d),

Petitioner is not entitled to habeas corpus relief on part of ground 1, ground 2, and part of ground

3, and that grounds 4, 5, and parts of grounds 1 and 3, are procedurally barred. See Dkt. # 14.

## *ANALYSIS*

### A.  Exhaustion/Evidentiary Hearing

       As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). After

careful review of the record, the Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b)

is satisfied in this case.  In addition, the Court finds that Petitioner is not entitled to an evidentiary

hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B.  Claims adjudicated by the OCCA

       The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be

applied by federal courts reviewing constitutional claims brought by prisoners challenging state

convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

federal habeas relief only if the state decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S.

362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 150-51 (10th Cir. 2001).  When a state court

applies the correct federal law to deny relief, a federal habeas court may consider only whether the

state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated several of Petitioner's habeas claims on direct appeal, and his ineffective assistance of appellate counsel claim on post-conviction appeal. With the above standards in mind, the Court will review Petitioner's claims adjudicated by the OCCA.

### 1. Denial of fair trial by improper voir dire (part of ground 1)

As part of his first proposition of error, Petitioner asserts that he was denied a fair trial when the prosecutor improperly invoked racial and ethnic prejudice against Petitioner during voir dire.[1] Petitioner was born in Iran.  See Dkt. # 14, Ex. A at 3. During voir dire, the prosecutor asked several members of the jury pool whether they had traveled or conducted business in the Middle East.  See Tr. Trans. at 47, 50, 51, 60.  He also asked many of them if they were familiar with customs in the Middle East, including treatment of women.  Id. at 48, 49, 53, 54, 60. On direct appeal, the OCCA rejected Petitioner's claim challenging the propriety of the prosecutor's questions, citing Wackerly v. State, 12 P.3d 1, 15 (Okla. Crim. App. 2000) (stating that failure to object to a prosecutor's objectionable statement waives all but plain error on appeal), and finding that "the *voir dire* by the prosecutor did not rise to the level of plan error . . . The questioning aided defense counsel in determining who might be prejudiced against his client." (Dkt. # 14, Ex. C).

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and

---

[1]Other subparts of ground 1 were first presented by Petitioner on post-conviction appeal and are procedurally barred as discussed in Part C below.

principles of due process guarantee a criminal defendant in state court an "impartial jury." Ristaino
v. Ross, 424 U.S. 589, 595 n. 6 (1976) (citations omitted).  The Supreme Court has stressed that the
trial court is granted wide discretion in conducting *voir dire* in the area of pretrial publicity and in
other areas of inquiry that might tend to show juror bias. Mu'min v. Virginia, 500 U.S. 415, 427
(1991). "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial
jury and assisting counsel in exercising peremptory challenges." Id. at 431.

The timing of Petitioner's trial coincided with a tragic event in the Middle East.  On October
12, 2000, a United States naval vessel, the USS Cole, was bombed by Middle East terrorists in the
port of Aden, Yemen. Seventeen (17) American sailors died in the attack. Petitioner's trial
commenced on October 17, 2000, only five (5) days after the bombing of the USS Cole. Because
of Petitioner's ethnicity, both the prosecutor and defense counsel had grounds for concern about the
potential for juror bias. The prosecutor asked questions concerning travel to the Middle East and
knowledge of customs in the Middle East. He did not use racial or ethnic slurs in asking his
questions. Defense counsel also asked questions concerning travel to the Middle East and dress
requirements for women in that part of the world. See Dkt. # 15, Tr. Trans. Vol. 2 at 206-07.
Defense counsel specifically asked prospective jurors if the events in the news, an apparent reference
to the bombing of the USS Cole, would prejudice any of them towards the Defendant.  Id. at 208.
The news from the Middle East had the potential to impact negatively the jury's consideration of
the case. Rather than injecting ethnic bias, the questions asked during *voir dire* were constitutionally
permissible as attempts to determine whether any potential jury member harbored bias or prejudice
against Petitioner because of his Iranian ethnicity.

After careful review of the record, the Court concludes that the OCCA's adjudication of this

claim did not result in a decision contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas corpus relief on this claim.

### 2. Prosecutorial misconduct (ground 2)

As his second proposition of error, Petitioner complains that the prosecutor made improper comments during closing argument. Specifically, Petitioner complains that during closing argument, the prosecutor improperly vouched for the credibility of the "victims," expressed his personal opinion, commented on the Petitioner's failure to testify, intentionally attempted to invoke sympathy for the "victims," and attempted to inflame the jury by continuing to develop ethnic prejudice. See Dkt. # 9 at 18. In rejecting this claim on direct appeal, the OCCA cited Welch v. State, 2 P.3d 356, 369-70 (Okla. Crim. App. 2000), and Price v. State, 518 P.2d 1281, 1283 (Okla. Crim. App. 1974), and found that "the 'sexual predator' comment during closing argument was cured by an admonition to the jury ... The other comments were within the range of proper argument." (Dkt. # 14, Ex. C).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir.1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

After reviewing the entire trial transcript, this Court finds that the OCCA's rejection of this claim was not an unreasonable application of constitutional law. None of the comments, even if improper, were significant enough to influence the jury's decision. See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998). The Court further finds that there is not a reasonable probability that the outcome would have been different without the alleged misconduct. See Hoxsie v. Kerby, 108 F.3d 1239, 1244-45 (10th Cir. 1997). In addition, defense counsel lodged an immediate objection to the prosecutor's use of the term "sexual predator" to describe Petitioner.  See Dkt. # 15, Tr. Trans. Vol. 4 at 616.  After hearing counsels' arguments at the bench, the trial court judge admonished the jury to disregard the comment. Id. at 618. As cited above, the OCCA held on direct appeal that the trial court's admonishment cured any error. Although the OCCA did not cite federal law in its ruling on this issue, the Tenth Circuit has recognized that the OCCA's longstanding position that a trial court's admonition usually cures any error is not in conflict with the standard established by federal law. Patton v. Miller, 425 F.3d 788, 800 (10th Cir. 2005). Federal law provides that there is a presumption "that a jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." See Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987).  Based upon the facts of this case, the Court agrees with the OCCA's conclusion that any error attributable to the prosecutor's use of the term "sexual predator" during closing argument was cured by the immediate objection by defense counsel and admonishment given by the trial court to the jury.

The Court concludes that the OCCA's adjudication of Petitioner's claim of prosecutorial misconduct during closing argument was not contrary to, or an unreasonable application of, clearly

established federal law. Lacking either countervailing Supreme Court precedent or an indication that the OCCA's determination of the facts in this case was manifestly unreasonable, this Court defers to the OCCA's rejection of Petitioner's prosecutorial misconduct claim. Pursuant to § 2254(d), habeas corpus relief on this claim shall be denied.

### 3. Ineffective assistance of trial counsel (part of ground 3)

As part of his third proposition of error (Dkt. # 9),[2] Petitioner asserts that he received ineffective assistance of trial counsel when his attorney failed to proceed with testimony of Stephanie Melillo, a dental assistant employed by Petitioner. After the prosecution rested its case, the defense called Ms. Melillo as its first witness. See Dkt. # 15, Tr. Trans. Vol. 4 at 529-30. Defense counsel had asked only three (3) questions when the prosecutor objected to the nature of the testimony. Id. at 531. After a lengthy conference at the bench, defense counsel stated that Ms. Melillo's testimony was rebuttal and elected not to proceed with her testimony during his case in chief. Id. at 535-36. He then called an expert to testify concerning the effects of nitrous oxide. Id. at 537. At the conclusion of the expert's testimony, the defense rested. Id. at 565. Neither the prosecution nor the defense presented rebuttal witnesses. Id. at 565-66. Petitioner now argues that had his attorney proceeded with questioning of Ms. Melillo, she would have testified that one of the victims, Mary Kershman, said nothing, upon returning for placement of a permanent crown, regarding the allegations of sexual touchings which had occurred during her prior dental procedure.

---

[2]Other subparts of ground 3, including Petitioner's claims regarding trial counsel's failure to produce prior sworn testimony of Charlene Abside, failure to impeach Erica Thornton with her inconsistent testimony provided at Petitioner's hearing before the Oklahoma Board of Dentistry, held January 14, 2000, see Dkt. # 28, Application for Post-Conviction Relief, Ex. 13, and regarding the filing of a civil lawsuit seeking monetary damages from Petitioner, see id., Ex. 14A (copy of petition filed in Tulsa County District Court, Case No. CJ-99-5882), and the "other errors/omissions of trial counsel," as identified in subsection D of Proposition III, were first presented by Petitioner on post-conviction appeal and are procedurally barred as discussed in Part C below.

<u>See</u> Dkt. # 9 at 23; Dkt. # 28, Ex. 1 at 41. Petitioner states that Ms. Melillo would have also testified that Amanda Evans, the former employee who alleged that she had been subjected to sexual battery, had been "let go" because of her health and being late and that she was very angry over a pay dispute with Petitioner. <u>Id.</u>

Petitioner raised this claim on direct appeal where it was rejected. The OCCA cited <u>Williams v. State</u>, 22 P.3d 702, 730 (Okla. Crim. App. 2001),[3] and found that "the alleged instances of ineffective assistance of counsel were proper strategic decisions, which we will not second-guess on appeal." <u>See</u> Dkt. # 14, Ex. C.

As discussed above, Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel unless he establishes that the OCCA's adjudication of this claim was an unreasonable application of Supreme Court precedent. To establish ineffective assistance of counsel a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Osborn v. Shillinger</u>, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. <u>Strickland</u>, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." <u>Id.</u> at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id.</u> at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense

---

[3] In <u>Williams v. State</u>, 22 P.3d 702, 730 (Okla. Crim. App. 2001), the OCCA applied the standard announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in rejecting an appellant's ineffective assistance of trial counsel claims.

after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).  It may be more efficient to dispose of an ineffective assistance of counsel claim based on lack of prejudice than to assess whether the counsel's performance was deficient. Brewer v. Reynolds, 51 F.3d 1519, 1523 (10th Cir. 1995) (citing Strickland, 466 U.S. at 697).

The Court finds Petitioner has not demonstrated that counsel performed deficiently when he decided to stop the examination of witness Melillo. The record reflects that the prosecutor argued there had been insufficient discovery concerning the testimony of Ms. Melillo and questioned whether she should be allowed to testify in the defense's case in chief. See Dkt. # 15, Tr. Trans. Vol. 4 at 531-33. Based on comments made by the trial court judge during the lengthy bench conference, defense counsel decided to stop his examination of Ms. Melillo and clearly stated for the record that his decision was based on the conclusion that her testimony was in the form of rebuttal. Id. at 532, 551. This Court is bound to heed the Supreme Court's warning in Strickland, 466 U.S. at 689, against using hindsight to second-guess attorneys' tactical decisions. Under Strickland, the Court is required to impose a heavy presumption that "counsel's conduct falls within the wide range of reasonable professional assistance; that is, . . . the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted). In this case, trial counsel's tactical decision concerning the testimony of witness Melillo does not

12

rise to the level of deficient performance.

In addition, Petitioner has not shown a reasonable probability that Ms. Melillo's testimony would have altered the outcome of the trial. In other words, even if counsel performed deficiently, Petitioner has failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors," the jury would have acquitted him of the crimes for which he stood accused. Strickland, 466 U.S. at 694.  Consequently, he was not prejudiced by his counsel's allegedly deficient performance during trial. Petitioner has failed to demonstrate that the OCCA's adjudication of the claim of ineffective assistance of trial counsel as raised on direct appeal was an unreasonable application of Strickland.  Habeas corpus relief on this claim shall be denied.

### 4. Ineffective assistance of appellate counsel (part of ground 3)

As part of his third proposition of error in this habeas action, Petitioner asserts that appellate counsel provided ineffective assistance of counsel.  Petitioner raised a claim of ineffective assistance of appellate counsel in his application for post conviction relief. See Dkt. # 28. The state courts rejected the claim, finding that Petitioner's appellate counsel was reasonably competent.  See Dkt. # 14, Exs. D and F.  In affirming the denial of post-conviction relief, the OCCA specifically held as follows:

> Applying the proper standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-693 (1984), Judge Wall found Petitioner's arguments fail to overcome the first tier of the *Strickland* test and that Petitioner's trial counsel acted as a reasonably competent attorney under the facts and circumstances of this case. She also found that Petitioner's allegation of error fails to establish that the results of Petitioner's direct appeal or the jury verdict of guilty beyond a reasonable doubt would have been changed.  Judge Wall also concluded Petitioner's appellate counsel was reasonably competent.
> * * * *
> Petitioner raised ineffective assistance of trial counsel on direct appeal and this issue is, therefore, barred by the doctrine of *res judicata*. As for Petitioner's claim that he was denied effective assistance of appellate counsel, the record before

this Court does not support this argument.  Petitioner's first two propositions of error were raised on direct appeal and are barred by the doctrine of *res judicata*. The remaining issues have been waived.

As Petitioner has failed to show entitlement to relief in a post-conviction proceeding, the order of the District Court of Tulsa County denying Petitioner's application for post-conviction relief is **AFFIRMED**.

(Dkt. # 14, Ex. F).

Petitioner is not entitled to relief on his claim of ineffective assistance of appellate counsel unless he establishes that the OCCA's adjudication of the claim, as raised on post-conviction appeal, was an unreasonable application of federal law as determined by the United States Supreme Court. The applicable standard was established by the Supreme Court in Strickland, 466 U.S. at 687. The Strickland test requires a showing of both deficient performance by counsel and prejudice to Petitioner as a result of the deficient performance. Id. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).  If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.  Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir.1998) (citing United States v. Cook, 45 F.3d 388, 392-93 (10th Cir. 1995)). If the issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394. The relevant questions for assessing Petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claims on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claims, Petitioner "would have prevailed on his appeal."  Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (applying

14

<u>Strickland</u>, 466 U.S. at 687-91)).

Upon review of the record in this case, the Court finds Petitioner has failed to establish that the OCCA's adjudication of the claim of ineffective assistance of appellate counsel was an unreasonable application of <u>Strickland</u>. The Court will address each of the claims, as identified by Petitioner in his supporting brief (Dkt. # 9), underlying the claim of ineffective assistance of appellate counsel.

> **a.      Failure to raise on direct appeal the Prosecutor's improperly/incorrectly
> defining the elements of law; diluting the presumption of innocence;
> improperly/incorrectly defining reasonable doubt; diluting the burden
> of proof and obtaining of sworn commitment to return guilty verdicts.**

In this subclaim, Petitioner alleges that appellate counsel provided ineffective assistance in failing to raise on direct appeal prosecutorial misconduct based on statements made by the prosecutor during *voir dire*. As discussed above, generally, a prosecutor's improper remark will require reversal of a state conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process. See <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). In assessing fundamental fairness, the comment must be reviewed in the context in which it was made and in light of the entire record. <u>See</u> <u>Greer v. Miller</u>, 483 U.S. 756, 765-66 (1987); <u>Donnelly</u>, 416 U.S. at 643. If the alleged prosecutorial misconduct denied a petitioner a specific constitutional right, a habeas claim may be established without requiring proof the entire trial was rendered fundamentally unfair by the remark. <u>See</u> <u>Paxton v. Ward</u>, 199 F.3d 1197, 1217 (10th Cir. 1999).

The prosecutor's statements cited by Petitioner have been, in large part, taken out of context. During *voir dire*, both the prosecutor and the defense attorney emphasized the presumption of innocence. <u>See</u> Tr. Trans. at 131-32, 182-83, 191. The prosecutor never attempted to define

15

"reasonable doubt" and in fact stated that "reasonable doubt" would "not be defined for you in this court, because it can't be defined." Id. at 187. The Court further finds that the jury was properly instructed by the trial court at the conclusion of the evidence. See Dkt. # 15, O.R. Vol. 1 at 51-70. The trial court's instructions and/or admonishments to the jury cured many of the purported errors. Furthermore, the prosecutor's questions concerning the jurors' abilities to return a verdict reflected an effort to uncover any bias or prejudice that a prospective juror might harbor against the traditional concepts of presumption of innocence and proof beyond a reasonable doubt. When the prosecutor's challenged comments are viewed in the context in which they were made and in light of the entire record, the Court finds that Petitioner's trial was not rendered fundamentally unfair. As a result, appellate counsel did not provide ineffective assistance in failing to raise on direct appeal the cited instances of prosecutorial misconduct.

> **b.     Failure to raise on direct appeal all of Prosecutor's comments on Petitioner's silence; Prosecutor's personal opinions; Prosecutor's vouching for truthfulness of his witnesses; Prosecutor's appeal to sympathy and ethnic/racial prejudice.**

Petitioner alleges that appellate counsel provided ineffective assistance in failing to raise on direct appeal prosecutorial misconduct based on statements made by the prosecutor during closing argument.  As discussed in subsection 2 above, however, appellate counsel did raise many of these claims on direct appeal.  Petitioner is not entitled to habeas corpus relief on those claims pursuant to § 2254(d).  As to any claim of prosecutorial misconduct identified by Petitioner that was omitted by appellate counsel on direct appeal, the Court finds that, applying the standard identified above, Petitioner is not entitled to habeas relief on these challenges. Viewing the comments in the context in which they were made and in light of the entire record, the Court finds that the prosecutor's allegedly improper remarks did not sufficiently infect the trial so as to make it fundamentally unfair,

16

and, therefore, a denial of due process. See Donnelly, 416 U.S. at 643; Greer, 483 U.S. at 765-66.

Appellate counsel did not provide ineffective assistance in failing to raise the omitted claims on

direct appeal.

> **c.      Failure to raise on appeal trial counsel's ineffectiveness of failing to move for a severance of counts due to improper/prejudicial count joinder; Failure to raise trial counsel's not objecting to the "eyewitness instruction" tantamount to directing a guilty verdict herein; Failure to raise the Prosecutor's "evidentiary harpoons" thus allowing the inference/extraneous influence of a prior dentist's conviction for child molestation to jurors; failure to interview and discover improper/extraneous jurors influence along with failure to subpoena and present the influence at the motion for new trial, as well as failure to present it on direct appeal; Failure to raise on appeal the prosecutor's improper opening statement and trial counsel's failure to properly object to it; failure to interview Juror Hammons and call him to testify regarding his ethnic/racial "disgust" for Petitioner; Failure to raise on appeal trial counsel's failure to object to the Prosecutor's side-bar remarks; Failure to raise the trial attorney's failure for not objecting to the trial court's non-objectivity and assisting the Prosecutor; failure to raise the trial court's hearings in chambers without Petitioner's presence.**

In this subclaim, Petitioner alleges that appellate counsel provided ineffective assistance in

failing to raise on direct appeal numerous claims, including claims of ineffective assistance of trial

counsel, claims of prosecutorial misconduct, claims of failure to investigate and discover juror bias,

and a claim that the trial court erred in conducting a hearing in chambers without Petitioner's

presence.

To the extent these subclaims are premised on appellate counsel's failure to raise ineffective

assistance of trial counsel claims, the Court finds Petitioner has failed to satisfy either prong of the

Strickland standard. None of the allegations, if raised on appeal, would have resulted in a

"reasonable probability that, but for his counsel's unreasonable failure" to raise the claims,

Petitioner "would have prevailed on his appeal." Neill, 278 F.3d at 1057 (citations omitted). First,

Petitioner has failed to demonstrate that his trial counsel performed deficiently in failing to file a motion to sever counts.  Under Oklahoma law, see Glass v. State, 701 P.2d 765, 768 (Okla. Crim. App. 1985), joinder of separate offenses is permitted if the offenses are part of a series of criminal acts or transactions. Joinder of a series of criminal acts is proper where the joined counts refer to: (1) the same type of offenses; (2) occurring over a relatively short period of time; (3) in approximately the same location; and (4) proof of each act or transaction overlaps so as to show a common scheme or plan. Id.  In Petitioner's case, the instances of sexual battery involved similar factual allegations by the victims, occurred within a one (1) year time period, and all occurred at Petitioner's office.  This Court finds no sound basis for severance of the counts. As a result, appellate counsel did not perform deficiently in failing to argue on appeal a claim of ineffective assistance of trial counsel for failing to file a motion to sever counts.

Next, Petitioner has failed to demonstrate that the result of his appeal would have been different had appellate counsel argued that his trial counsel performed deficiently in failing to object to (a) the "eyewitness" instruction given by the trial court, (b) the prosecutor's improper opening statement, (c) the prosecutor's side-bar remarks, and (d) the trial court's non-objectivity and assistance provided to the prosecutor. Under Oklahoma law, a failure to object to an instruction waives all but plain error.  Romano v. State, 909 P.2d 92, 120 (Okla. Crim. App. 1995).  Because the instructions as a whole provided an accurate statement of the law, see Smith v. State, 157 P.3d 1155, 1179 (Okla. Crim. App. 2007), counsel's failure to object would not rise to the level of "plain error."  Similarly, under Oklahoma law, a "[f]ailure to object with specificity to errors alleged to have occurred at trial, thus giving the trial court an opportunity to cure the error during the course of trial, waives that error for appellate review unless the error constitutes fundamental error, i.e.

plain error." <u>Simpson v. State</u>, 876 P.2d 690, 693 (Okla. Crim. App. 1994). If the OCCA finds plain

error, the error is subject to harmless error review.  In this case, trial counsel's failure to object to

the prosecutor's opening statement, his side-bar remarks and the purported assistance provided by

the trial court to the prosecutor waived all but "plain error." None of the "errors" rise to the level

of "plain error." As a result, the results of Petitioner's direct appeal would not have been different

had appellate counsel argued that trial counsel provided ineffective assistance in failing to lodge the

identified objections.

   Furthermore, appellate counsel did not perform deficiently in failing to raise arguments

concerning additional grounds of prosecutorial misconduct, including improper comments during

opening statement and use of an "evidentiary harpoon" allowing the inference/extraneous influence

of a prior dentist's conviction for child molestation.  As to any claim of prosecutorial misconduct

identified by Petitioner that was not raised on direct appeal, the Court finds that Petitioner is not

entitled to habeas relief on these challenges. Viewing the comments in the context in which they

were made and in light of the entire record, the Court finds that the prosecutor's allegedly improper

remarks did not sufficiently infect the trial so as to make it fundamentally unfair, and, therefore, a

denial of due process. <u>See</u> <u>Donnelly</u>, 416 U.S. at 643; <u>Greer</u>, 483 U.S. at 765-66. Furthermore,

Petitioner has failed to demonstrate that the result of his appeal would have been different had

counsel argued that the prosecutor improperly used an "evidentiary harpoon." Petitioner argued in

his post-conviction proceeding that in response to questions by the prosecutor about why they came

forward, two of the victims responded with comments concerning the possibility of Petitioner

subjecting young girls to sexual battery. Those comments cannot be properly categorized as

"evidentiary harpoons"[4] since they were responsive to a legitimate question by the prosecutor. Petitioner also speculates that the prosecutor intentionally planned the responses to "drudge up memories/prejudice" regarding another Tulsa dentist who had been convicted in 1998 of sexually abusing young female patients. The Court finds nothing in the record supports Petitioner's belief that the questions were asked for the specific purpose of linking the charges against Petitioner to a case tried two years prior to Petitioner's trial. Appellate counsel did not provide ineffective assistance in failing to raise these omitted claims of prosecutorial misconduct on direct appeal.

Petitioner also claims that his appellate counsel provided ineffective assistance in failing to investigate and conduct juror interviews. According to Petitioner, one of the jurors approached him in the hallway outside the courtroom and emphatically declared, "God bless America" while angrily staring at him. See Dkt. # 28 at 27, and attached affidavit of Petitioner. As a result of that encounter, Petitioner's new attorneys raised a claim of juror bias in the motion for a new trial. Although the new attorneys represented Petitioner on appeal, they did not raise a claim based on the hallway encounter on direct appeal. In addition, Petitioner asserts that an investigator for Mac Oyler, the attorney who represented Petitioner in post-conviction proceedings, interviewed several jurors who made statements evidencing ethnic bias and raised questions about the absence of witnesses for the defense. See Dkt. # 28, Ex. 1, attached Ex. 9. In Oklahoma, it is well-settled that "jurors may not impeach or contradict their verdict by affidavits or testimony after they have been discharged from

---

[4]The OCCA has held that evidentiary harpoons have several characteristics: "(1) they are generally made by experienced police officers; (2) they are voluntary statements; (3) they are willfully jabbed rather than inadvertent; (4) they inject information indicating other crimes; (5) they are calculated to prejudice the defendant; and (6) they are prejudicial to the rights of the defendant on trial." Ochoa v. State, 963 P.2d 583, 598 (Okla. Crim. App. 1998) (quoting Bruner v. State, 612 P.2d 1375, 1378-79 (Okla. Crim. App. 1980)).

the jury." See Wood v. State, 158 P.3d 467, 480 n. 29 (Okla. Crim. App. 2007) (citing Wacoche v. State, 644 P.2d 568, 572 (Okla. Crim. App. 1982)). None of the information provided by Petitioner convinces the Court that the outcome of his appeal would have been altered had his appellate counsel investigated "improper/extraneous jurors influence" and ethnic/racial "disgust" by any juror. Petitioner's claim of ineffective assistance of appellate counsel fails under Strickland.

Lastly, Petitioner has failed to demonstrate that the result of his appeal would have been different had appellate counsel argued that the trial court erred in conducting a hearing in chambers without Petitioner's presence.  In his application for post-conviction relief, see Dkt. # 28, Ex. 1, Petitioner identified one (1) instance when he was not present in chambers: when a prospective juror was questioned and excused for cause.  Voir dire is a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present. See Gomez v. United States, 490 U.S. 858, 873 (1989) (citing Lewis v. United States, 146 U.S. 370, 374 (1892)).  In Snyder v. Com. of Mass., 291 U.S. 97, 106 (1934), *overruled in part on other grounds by* Malloy v. Hogan, 378 U.S. 1 (1964), the Supreme Court stated that a defendant has a due process right to be present where his presence "bears, or may fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend." Id. The Court added, however, that it did not intend to hold in any way that "the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." Id. at 106-107. "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. at 107-108. See also Lockett v. State, 53 P.3d 418, 422-23 (Okla. Crim. App. 2002); Bland v. State,  4 P.3d 702, 712 (Okla. Crim. App. 2000); Perry v. State, 893 P.2d 521, 527-28 (Okla. Crim. App. 1995).  In this case, Petitioner has

failed to demonstrate that the hearing conducted in chambers with a single potential juror who was

excused for cause was "thwarted" by his absence.  As a result, the Court finds that the outcome of

Petitioner's direct appeal would not have been different had appellate counsel argued that the trial

court erred in conducting a hearing in chambers without Petitioner's presence.

> **d.      Failure to raise a cumulative error argument on direct appeal.**

To the extent Petitioner argues that his appellate counsel provided ineffective assistance in

failing to argue on direct appeal that, even if no individual error merited reversal, the cumulative

effect of such errors warranted either reversal of his convictions or a modification of his sentences,

the Court finds the claim lacks merit. The OCCA has held that a cumulative error argument has no

merit when none of the allegations of error raised by an appellant is sustained. Eizember v. State,

164 P.3d 208, 245 (Okla. Crim. App. 2007) (citing Warner v. State, 144 P.3d 838, 896 (Okla. Crim.

App. 2006)). If, however, the OCCA finds numerous irregularities during the course of a trial that

tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all

the errors was to deny the defendant a fair trial. Id. This Court finds that Petitioner has failed to

demonstrate that he was denied a fair trial and that, as a result, Petitioner's appellate counsel did not

perform deficiently in failing to raise a cumulative error argument on direct appeal.

Having addressed each allegation of alleged ineffective assistance of appellate counsel raised

in the habeas corpus petition, the Court finds that Petitioner has failed to demonstrate that appellate

counsel performed deficiently. Strickland, 466 U.S. at 687.  The Court further finds there is no

reasonable probability that Petitioner would have prevailed on direct appeal had appellate counsel

presented the arguments presently urged by Petitioner. Neill, 278 F.3d at 1057. The Court concludes

that Petitioner has failed to demonstrate that the OCCA's rejection of his claims of ineffective

assistance of appellate counsel was an unreasonable application of <u>Strickland</u> and, as a result, he is not entitled to habeas corpus relief on his claim of ineffective assistance of appellate counsel.

### C.  Procedural Bar (parts of ground 1, parts of ground 3, grounds 4 and 5)

As part of his first ground of error, Petitioner alleges that the prosecutor improperly and incorrectly defined the elements/law, diluted the presumption of innocence, improperly/incorrectly defined reasonable doubt, diluted the burden of proof, and obtained sworn commitments to return guilty verdicts (regardless of the defense). <u>See</u> Dkt. #s 1 and 9.  As part of his third ground of error, Petitioner presents multiple claims of ineffective assistance of trial counsel that were not raised on direct appeal. <u>Id.</u> In grounds 4 and 5, Petitioner identifies "irregularities" at trial that allegedly rendered his trial fundamentally unfair and complains of cumulative error. Upon careful review of the pleadings filed by Petitioner in state court, the Court finds that all of these claims could have been but were not raised on direct appeal. Each of these claims was first presented to the OCCA on post-conviction appeal. In affirming the state district court's denial of post-conviction relief, the OCCA held that, generally "all issues previously ruled upon by this Court are *res judicata*, and all issues not raised in the direct appeal, which could have been raised, are waived." (Dkt. # 14, Ex. F). The OCCA specifically found that the  "first two propositions of error were raised on direct appeal and are barred by the doctrine of *res judicata*. The remaining issues have been waived." (<u>Id.</u>) Thus, with the exception of the claim of ineffective assistance of appellate counsel, the OCCA imposed a procedural bar on the claims that were not raised on direct appeal.  In response to the petition, Respondent asserts that this Court should uphold the procedural bar imposed by the OCCA as to Petitioner's claims first raised on post-conviction.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas

claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'"  Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir.1991)).

Applying the principles of procedural bar to this case, the Court agrees with Respondent that Petitioner's claims first presented to the OCCA on post-conviction appeal are procedurally barred. The OCCA's procedural bar based on Petitioner's failure to raise the claims in a direct appeal is an "independent" state ground because it "was the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. Additionally, as to Petitioner's challenges to trial errors and conduct by the prosecutor, the procedural bar was based on an "adequate" state ground sufficient to bar the claims. The OCCA  routinely bars claims that could have been but were not raised on appeal.

As to the adequacy of the procedural bar imposed on Petitioner's claims of ineffective assistance of trial counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns may justify an exception to the general rule of procedural default.  Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).  The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to

24

obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)). The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998). In English, the circuit court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

After reviewing the record in the instant case in light of the factors identified in English, the Court concludes that the procedural bar imposed by the state courts on Petitioner's ineffective assistance of trial counsel claim is based on grounds adequate to preclude federal habeas review. Petitioner was represented at trial by attorney Kurt Hoffman. On appeal, Petitioner was represented by attorneys Robert Nigh, Jr., and Clark Brewster. For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel at trial and on appeal. The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. Id. at 1263-64. Even if Petitioner's claims in this case could not all be resolved on the trial record alone, Petitioner has not alleged that the Oklahoma remand procedure, as provided by Rule 3.11 of the Rules of the Oklahoma Court of Criminal Appeals, was inadequate to allow him to supplement the record on his ineffective assistance of counsel claims. See Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999) (once the state pleads the affirmative defense of an

independent and adequate state procedural bar, the burden shifts to the petitioner to make specific allegations as to the inadequacy of the state procedure). Although Respondent has alleged an independent and adequate procedural bar, see Dkt. # 14, Petitioner did not file a reply and has not put the adequacy of Oklahoma's remand procedure at issue. As a result, he cannot demonstrate that Oklahoma's procedural bar is inadequate and his claims of ineffective assistance of trial counsel are procedurally barred.

Because of Petitioner's procedural default, this Court may not consider the claims unless he is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered. See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941042 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner asserts that appellate counsel provided ineffective assistance in failing to raise or inadequately raising the defaulted claims. See Dkt. #s 1 and 9. It is well established that in certain circumstances, counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. Carrier, 477 U.S. at 488-89. However, the assistance provided by appellate counsel must rise to the level of a constitutional violation. Id. Furthermore, the ineffective assistance

26

of appellate counsel claim asserted as "cause" must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Id. at 489. In this case, Petitioner did assert a claim of ineffective assistance of appellate counsel on post-conviction appeal.  See Dkt. # 28 and Dkt. # 14, Ex. F. The Court has considered Petitioner's claim of ineffective assistance of appellate counsel in part B(4), above, and has determined that appellate counsel did not provide ineffective assistance. Therefore, Petitioner's claim of ineffective assistance of appellate counsel cannot constitute "cause" sufficient to excuse Petitioner's procedural default. Carrier, 477 U.S. at 488-89.

Petitioner's only other means of gaining federal habeas review of his defaulted claims is a claim of actual innocence under the fundamental miscarriage of justice exception.  Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995).  To meet this test, a criminal defendant must make a colorable showing of factual innocence.  Beavers v. Snaffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Petitioner does not make any showing of "factual innocence." As a result, the Court finds the fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claims are not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's defaulted claims. Coleman, 510 U.S. at 724. Habeas corpus relief on those grounds shall be denied.

### CONCLUSION

After carefully reviewing the record in this case, the Court concludes that Petitioner has not

established that he is in custody in violation of the Constitution or laws of the United States.

Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for writ of habeas corpus

(Dkt. # 1) is **denied**. A separate judgment shall be entered in this matter.

DATED THIS 23rd day of April, 2008.

TERENCE KERN
UNITED STATES DISTRICT JUDGE